UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CENTRAL AMERICAN REFUGEE CENTER,
M.C. and V.A., on behalf of themselves and all
others similarly situated,

|  |  |
|---|---|
| *Plaintiffs,* | Case No. 23-cv-5412 (NJC)(ARL) |

v.

NASSAU COUNTY, NASSAU COUNTY
POLICE DEPARTMENT, and PATRICK
RYDER, in his official capacity as Commissioner
of Nassau County Police Department, OFFICER
JOHN DOE, head of the Internal Affairs Unit of
the Nassau County Police Department, and
SERGEANT SABRINA GREGG, Nassau County
Police Department Language Access Coordinator,

*Defendants.*
-----------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS
### THE SECOND AMENDED COMPLAINT

KEANE & BEANE, P.C.
*Attorneys for All Defendants*
534 Broadhollow Road, Ste. 130
Melville, New York 11747
(631) 776-5910
sberlin@kblaw.com
rzuckerman@kblaw.com

Sharon N. Berlin, Esq.
Richard K. Zuckerman, Esq.
*Of Counsel*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT .......................................................................................................... 2

      POINT I
      PLAINTIFFS' *MONELL* CAUSES OF ACTION SHOULD BE DISMISSED ............... 3

         A.  PLAINTIFFS' RIGHTS PURSUANT TO THE EQUAL
            PROTECTION CLAUSE HAVE NOT BEEN VIOLATED .................... 4

            1.  Plaintiffs Do Not Allege That Defendants Harbored Personal
               Biases ................................................................................. 5
            2.  Defendants Are Not Alleged To Have Acquiesced To Bias
               Within the NCPD's Ranks ................................................... 6

         B.  PLAINTIFFS' RIGHTS PURSUANT TO THE PETITION CLAUSE
            HAVE NOT BEEN VIOLATED ................................................ 8

      POINT II
      PLAINTIFFS' TITLE VI CLAIM SHOULD BE DISMISSED ...................................... 12

         A.  LEP STATUS IS NOT AN AUTOMATIC PROXY FOR NATIONAL
            ORIGIN DISCRIMINATION ................................................... 12

            1.  The Concept Of "National Origin" Is Coextensive Under Title
               VI and the Equal Protection Clause .................................... 12
            2.  Language Is Not A Proxy For National Origin In Equal
               Protection Claims ............................................................... 14
            3.  Language Is Not A Proxy For National Origin In Title
               VI Claims .......................................................................... 15

         B.  THERE IS NO BASIS FOR AN INFERENCE OF DISCRIMINATION
            ON THE BASIS OF NATIONAL ORIGIN .................................. 16

            1.  A Discriminatory National Origin Classification Must Be More
               Specific Than "Foreign Born" Or "Non-American" .................... 16
            2.  The SAC Does Not Describe Any Discriminatory Actions
               Motivated By Plaintiffs' Country Or Region Of Origin ............... 18

POINT III
THE OFFICAL CAPACITY DEFENDANTS SHOULD BE DISMISSED FROM THE
ACTION ...................................................................................................................20

POINT IV
THE NASSAU COUNTY POLICE DEPARTMENT SHOULD BE DISMISSED
FROM THE ACTION ...............................................................................................21

POINT V
THE COURT SHOULD DECLINE PENDENT JURISDICTION OVER THE
PLAINTIFFS' STATE LAW CAUSE OF ACTION .......................................................21

POINT VI
THE PLAINTIFFS' CAUSE OF ACTION FOR DECLARATORY JUDGEMENT
SHOULD BE DISMISSED  ........................................................................................22

CONCLUSION..........................................................................................................................23

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                   <u>**Page**</u>

*Aguilera v. County of Nassau,*
425 F. Supp. 2d 320,(E.D.N.Y. 2006) ........................................................................21

*Albright v. Oliver,*
510 U.S. 266, (1994) ...................................................................................................3

*APS Contractors Inc.,*
2023 WL 2574740 ................................................................................................ 16, 18

*Arum v. Miller,*
193 F. Supp. 2d 572, (E.D.N.Y. 2002) ........................................................................9

*Ashcroft v. Iqbal,*
556 U.S. 662, (2009) ...................................................................................................2

*Askins v. Doe #1,*
727 F.3d 248, (2d Cir. 2013)........................................................................................3

*Borough of Duryea v. Guarnieri,*
564 U.S. 379, (2011) ...............................................................................................8, 10

*Brewster v. City of Poughkeepsie,*
447 F. Supp. 2d 342, (S.D.N.Y. 2006)......................................................................16

*Brown v. City of Oneonta,*
221 F.3d 329, (2d Cir. 2000)........................................................................................4

*Carmona v. Sheffield,*
475 F.2d 738, (9th Cir. 1973) ...................................................................................14

*Carnegie-Mellon Univ. v. Cohill,*
484 U.S. 343, (1988) .................................................................................................22

*Carter v. City of New York,*
2014 WL 4953641, (S.D.N.Y. September 30, 2014)....................................................8

*Chevron Corp. v. Naranjo,*
667 F.3d 232, 244 (2d Cir. 2012), 568 U.S. 958 (2012)...........................................23

*City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432, (1985) ...................................................................................................4

*Cole v. Nassau County Police Dept.*,
2023 WL 4420256, (E.D.N.Y. July 10, 2023) ...................................................21

*Compare Kajoshaj v. New York City Dept. of Educ.*,
543 Fed. App'x 11, (2d Cir. 2013)...................................................................19

*Cruz v. New Jersey*,
2022 WL 3681243, (D.N.J. August 25, 2022)...............................................18

*Curley v. Vill. of Suffern*,
268 F.3d 65, (2d Cir. 2001).........................................................................220

*Desulma v. Goolsby*,
1999 WL 147695, (S.D.N.Y. Mar. 16, 1999) ................................................10

*Durand v. Excelsior Care Group, LLC*,
2020 WL 7246437, (E.D.N.Y. December 9, 2020) .................................16, 18

*Eldars v. State Univ. of New York at Albany*,
2021 WL 4699221, (2d Cir. 2021) ...........................................................4, 12

*Estate of Morris ex rel. Morris v. Dapolito*,
297 F. Supp. 2d 680, (S.D.N.Y. 2004) ............................................................8

*Frontera v. Sindell*,
522 F.2d 1215, (6th Cir. 1975) ....................................................................14

*Futia v. United States*,
2023 WL 3061903, at *6 (S.D.N.Y. April 24, 2023)......................................11

*Glover v. City of New York*,
2018 WL 4906253,  (E.D.N.Y. October 9, 2018)............................................6

*Greenway v. County of Nassau*,
97 F. Supp. 3d 225, (E.D.N.Y. 2015) ...........................................................20

*Personnel Administrator of Massachusetts v. Feeney*,
442 U.S. 256, 279 (1979).............................................................................6

*Hayden v. Paterson*,
594 F.3d 150, (2d Cir. 2010)........................................................................6

*Hargrove v. New York City Constr. Auth.*,
2014 WL 3756303, (E.D.N.Y. May 7, 2014) ................................................13

*Henry v. County of Nassau*,
6 F.4th 324, (2d Cir. 2021) .........................................................................21

*Hilton v. City of Wheeling*,
209 F.3d 1005 (7th Cir. 2000) (Posner, C. J.), 531 U.S. 1080 (2001)...........................................9, 11

*Hogan v. County of Lewis*,
2014 WL 118964, (N.D.N.Y. January 10, 2014) ...........................................................................11

*Jean v. Acme Bus Corp.*,
2012 WL 4171226, (E.D.N.Y. September 19, 2012)........................................................................10

*Lau v. Nichols*,
414 U.S. 563 (1974)........................................................................................................................12

*Li v. City of New York*,
2018 WL 6251339, (E.D.N.Y. November 28, 2018).........................................................................9

*Lin v. City of New York*,
2018 WL 4119207 (E.D.N.Y. August 29, 2018) ..............................................................................9

*Lopez v. Bay Shore Union Free Sch. Dist.*,
668 F. Supp. 2d 406, (E.D.N.Y. 2009) .............................................................................................5

*Lucente v. Int'l Bus. Machs. Corp.*,
310 F.3d 243, (2d Cir. 2002).........................................................................................................2, 3

*Matican v. City of New York*,
524 F.3d 151, (2d Cir. 2008)...........................................................................................................3

*Monell v. Dept. of Soc. Servs.*,
436 U.S. 658, (1978) .......................................................................................................................3

*Moua v. City of Chico*,
324 F. Supp. 2d 1132, (E.D. Cal. 2004) ..........................................................................................4

*Oquendo v. City of New York*,
492 F. Supp. 3d 20, (E.D.N.Y. 2020) ..............................................................................................3

*OSU Student Alliance v. Ray*,
699 F.3d 1053, (9th Cir. 2012) ........................................................................................................5

*Panjawani v. Jet Way Security & Investigations, LLC*,
2016 WL 3675331, (S.D.N.Y. February 16, 2016) ........................................................................16

*Paradoa v. Philadelphia Hous. Auth.*,
2014 WL 2476595, (E.D. Pa. June 2, 2014)...................................................................................16

*People v. Aviles*,
28 N.Y.3d 497 (2016) .....................................................................................................................15

iv

*Perros v. County of Nassau,*
238 F. Supp. 3d 395, (E.D.N.Y. 2017) ..................................................................21

*Raymond v. City of New York,*
317 F. Supp. 3d 746, (S.D.N.Y. 2018) ....................................................................5

*Regents of the University of California v. Bakke,*
483 U.S. 265 (1978).......................................................................... 12, 13, 14, *passim*

*Reynolds v. Giuliani,*
506 F.3d 183, (2d Cir. 2007).....................................................................................7

*Richmond v. Gen. Nutrition Cntrs. Inc.,*
2011 WL 2493527, (S.D.N.Y. June 22, 2011) ......................................................19

*Rivera-Powell v. New York City Bd. of Elections,*
470 F.3d 458, (2d Cir. 2006).....................................................................................5

*Rose v. County of Nassau,*
904 F. Supp. 2d 244, (E.D.N.Y. 2012) ..................................................................21

*Saleh v. Barr,*
2020 WL 5544440, (W.D.N.Y. September 16, 2020) ............................................10

*Skelly Oil Co. v. Phillips Petroleum Co.,*
339 U.S. 667,  (1950)..............................................................................................22

*Soberal-Perez v. Heckler,*
717 F.2d 36, (2d Cir.1983), 466 U.S. 929 (1984) ..........................................6, 14, 15

*Sure–Tan, Inc. v. NLRB,*
467 U.S. 883, (1984) .................................................................................................8

*Tolbert v. Queens Coll.,*
242 F.3d 58, (2d Cir. 2001).....................................................................................12

*Town of Babylon v. James,*
___ F. Supp. 3d ___, 2023 WL 8734201, (E.D.N.Y. December 19, 2023) .......................2

*U.S. v. Restrepo,*
999 F.2d 640, (2d Cir. 1993)...................................................................................17

*Velez v. Burge,*
2009 WL 3459744, (W.D.N.Y. October 20, 2009) ...............................................10

*Vega v. Hempstead Union Free Sch. Dist.*,
2017 WL 10379106, (E.D.N.Y. May 18, 2017) ...................................................16

*Velasquez v. Goldwater Mem. Hosp.*,
88 F. Supp. 2d 257, (S.D.N.Y. 2000) ...................................................14

*Verdi v. City of New York*,
306 F. Supp. 3d 534, (S.D.N.Y. 2018) ...................................................21

*Vialez v. New York Hous. Auth.*,
783 F. Supp. 109,  (S.D.N.Y. 1991) ...................................................15

*Warner-Jenkinson Co. v. Allied Chem. Corp.*,
567 F.2d 184, (2d Cir. 1977) ...................................................22

*Yusuf v. Vassar Coll.*,
35 F.3d 709, (2d Cir. 1994) ...................................................5

*Zhang v. Regan*,
2011 WL 1456188, (E.D.Va. April 14, 2011) ...................................................4

*Zutz v. Nelson*,
601 F.3d 842, 850 (8th Cir. 2010), 562 U.S. (2010) ...................................................22

## **Statutes**                                                                 **Page**

22 U.S.C. § 2201 ...................................................1

28 U.S.C. § 1367(c)(3) ...................................................1, 22, 23

42 U.S.C. § 1983 ...................................................1, 3

42 USC 2000e-2 ...................................................15

Civil Rights Act of 1964 ...................................................1, 16

Fed. R. Civ. P. 12(b)(1) ...................................................23

Fed. R. Civ. P. 12(b)(6) ...................................................2, 14, 22

Fed. R. Civ. P. 43(d) ...................................................10

## PRELIMINARY STATEMENT

In this putative class action, Plaintiffs incorrectly contend that Limited English Proficient ("LEP") individuals have a legally-enforceable right to receive immediate or near-immediate language translation services during all in-person or telephonic encounters with the Nassau County Police Department ("NCPD") and that Defendants' failure to provide these services on a consistent basis is a product of intentional discrimination based on their LEP status and the perception that non-native English speakers are foreign-born and not American. Plaintiffs' Second Amended Complaint ("SAC") alleges causes of action as follows:

1. Intentional discrimination in violation of Title VI of the Civil Rights Act of 1964;

2. Equal Protection discrimination pursuant to 42 U.S.C. § 1983;

3. First Amendment violation pursuant to 42 U.S.C. § 1983;

4. Violation of Article I, § 11 of the New York State Constitution; and

5. Declaratory relief pursuant to 22 U.S.C. § 2201.

Giving the SAC every favorable inference, as must be done at this stage of the proceeding, it does not present a plausible claim to relief. The Title VI cause of action should be dismissed because the SAC fails to plausibly allege that Plaintiffs were victims of discrimination based on their national origin. The Equal Protection *Monell* cause of action should be dismissed because Plaintiffs did not plausibly plead an infringement of their constitutional rights by a municipal policy or custom. Similarly, the First Amendment cause of action should be dismissed because Plaintiffs do not plausibly allege that a municipal policy or practice infringed upon their right to petition the government. Upon the dismissal of these federal causes of action, this Court should deny Plaintiffs' claim for declaratory relief and exercise its discretion pursuant to 28 U.S.C. § 1367(c)(3) and dismiss the state law constitutional cause of action.

If any causes of action remain following determination of this motion, the NCPD should be dismissed as a party as it is an administrative arm of the County, not subject to suit.  In addition, Defendants Ryder, Gregg and Doe, sued only in their official capacities, should be dismissed as a *Monell* claim against them is duplicitous with the claims against the County and there is no individual liability for the alleged Title VI violation.

## STATEMENT OF FACTS

The individual Plaintiffs allege that they are current or former residents of Nassau County who have LEP and are of Latin American origin. Amended Complaint ("SAC"), ¶¶ 13-15. On isolated occasions from 2020 to 2023, each individual Plaintiff alleges they contacted the NCPD for assistance and were not consistently provided with immediate or near-immediate translator assistance from the NCPD. *Id.* at ¶¶ 41-93. Plaintiffs allege that the NCPD's Language Access Plan is not consistently or universally applied to LEP persons, due to a municipal policy or custom of discrimination against LEP persons by Defendants. *Id.* at ¶¶ 2, 99-102, 123-145, 183, 186.

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Town of Babylon v. James*, ___ F. Supp. 3d ___, 2023 WL 8734201, at *3 (E.D.N.Y. December 19, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."). The Second Amended Complaint does not do so.

## POINT I

### PLAINTIFFS' *MONELL*
### <u>CAUSES OF ACTION SHOULD BE DISMISSED</u>

A claim pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), permits a plaintiff to

hold a municipal entity liable for constitutional violations pursuant to 42 U.S.C. § 1983 if the plaintiff

demonstrates one or more of the plaintiff's federal constitutional rights were infringed because of a

municipal policy or custom. Here, Plaintiffs plead as their second and third causes of action Equal

Protection and First Amendment violations exclusively as *Monell* claims against Defendants Nassau

County and the NCPD. To properly plead a § 1983 claim against a municipality, the Complaint must

plausibly allege a deprivation of a person's constitutional rights by pleading and proving "three

elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial

of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020).

"*Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a

governmental policy, regardless of whether he suffered the infliction of a tort resulting from the

policy." *Askins v. Doe #1*, 727 F.3d 248, 253 (2d Cir. 2013). If a person's constitutional rights were

not violated, no *Monell* claim exists "regardless of whether the officers acted pursuant to a

municipal policy or custom." *Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008);

*Oquendo v. City of New York*, 492 F. Supp. 3d 20, 32 (E.D.N.Y. 2020) ("It is well-settled that a

*Monell* claim cannot succeed without an underlying constitutional violation.") (citations omitted).

Accordingly, "[t]he first step in any [1983] claim is to identify the specific constitutional right

allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, the SAC does not plausibly

plead a violation of either Plaintiff's Equal Protection Clause or First Amendment constitutional

rights.

3

**A.**      **Plaintiffs' Rights Pursuant To The Equal Protection Clause Have Not Been Violated.**

The Equal Protection Clause requires that "all similarly situated persons . . . be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To date, no court has interpreted the Equal Protection Clause as creating an affirmative right for LEP persons to receive language translation services during all interactions with police officers. *See, e.g.*, *Zhang v. Regan*, 2011 WL 1456188, at *4 (E.D.Va. April 14, 2011) ("Individuals have no constitutional right to an interpreter for every interaction with police"); *see also Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1137 (E.D. Cal. 2004). In this action, Plaintiffs did not have an Equal Protection right to government-provided translation services during their calls to 911, while speaking to police after their arrival, or when making a complaint about a police officer, or when appearing in-person at a police station to file a criminal complaint.

Although access to a translator is not a constitutionally-protected right, a discriminatory denial of access implicates Equal Protection clause rights. *Eldars v. State Univ. of New York at Albany*, 2021 WL 4699221, at *3 (2d Cir. 2021) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000)). The SAC alleges that "Defendants have continued to engage in intentional discrimination against LEP individuals based on their perception that non-native English speakers are foreign born and not American." SAC, ¶ 30.

Plaintiffs' beliefs about Defendants' "perceptions" are immaterial unless supported by objective factual allegations plausibly suggesting they were the victims of intentional discrimination. "To withstand 'a motion to dismiss, the plaintiff[s] must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of

racially discriminatory intent.'" *Raymond v. City of New York*, 317 F. Supp. 3d 746, 761 (S.D.N.Y. 2018) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)).[1]

Although the SAC asserts that the Language Access Plan was not properly implemented, it contains no allegations plausibly suggesting that the implementation issues were the product of a policy or custom of intentional discrimination within the NCPD or the County

**1.  Plaintiffs Do Not Allege That Defendants Harbored Personal Biases.**

Claims of intentional discrimination must be "plead [sic] with particularity." *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009). "The Second Circuit has stated that a plaintiff must plead specific facts that give rise to an inference of intentional discrimination." *Id.* (citing *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006)).

Here, the only allegations of national origin discrimination are based solely on the conclusory claim that Defendants were aware of implementation issues with the Language Access Plan but failed to remedy them. These conclusory allegations are based on Plaintiffs' beliefs about Defendants' purported personal biases or discriminatory motives. No allegedly discriminatory actions, statements, or decisions are pled with particularity to be personally attributed to any Defendant. There are no allegations suggesting the NCPD or Nassau County discriminated in any aspect of policing other than their implementation of the Language Access Plan, despite the immense size of the Nassau County immigrant population. *See* SAC, ¶ 23. Rather, the SAC relies on the speculative theory that Defendants must be biased against foreign-born persons because the Language Access Plan primarily

---

[1] Converting their Equal Protection claim to a strict *Monell* theory does not relieve Plaintiffs of the requirement to plausibly allege Defendants had an intent to purposefully discriminate. Every Equal Protection Clause discrimination claim requires intent, regardless of whether it is alleged against a subordinate police offer or a departmental policy-maker. *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1074 (9th Cir. 2012) ("[O]nly in limited situations has the Supreme Court found constitutional torts to require specific intent," one such situation being "invidious discrimination under the Equal Protection Clause.").

benefits foreign-born persons and the Defendants have failed to properly implement it. Federal precedent requires more than naked conclusory allegations of discriminatory intent.

Even if, *arguendo*, Defendants knew that there were deficiencies in the NCPD's language access program and that a failure to remedy those deficiencies would primarily impact LEP persons more than English-speakers, an inference of intentional discrimination would not arise. Rather, Plaintiffs' allegations must illustrate that Defendants *intentionally* sought to disadvantage LEP individuals based on their national origins. The Second Circuit articulated the rule in *Soberal-Perez v. Heckler*, 717 F.2d 36, 42 (2d Cir.1983), *cert. denied* 466 U.S. 929 (1984), that "[d]iscriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. To establish intentional discrimination, a plaintiff must show that 'the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group.'" *Id.* at 42 (citing *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Glover v. City of New York*, 2018 WL 4906253, at *16 (E.D.N.Y. October 9, 2018) (quoting *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010)).

Thus, governmental action which impacts a particular class of persons disproportionately does not violate the Equal Protection Clause unless the disparate impact was the purposeful product of intentional discrimination. *Feeney*, 442 U.S. at 279-281. The SAC does not plausibly allege that the alleged custom or practice of not correctly implementing the Language Access Plan was the product of personal biases toward any group of persons based on national origin or any other protected characteristic.

## 2. Defendants Are Not Alleged To Have Acquiesced To Bias Within The NCPD's Ranks.

There are no plausible allegations that Defendants were aware of and condoned patterns of widespread bias within the NCPD's ranks. As stated by the Second Circuit, "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and

does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

While the SAC alleges that Defendants were aware of the multiple "audits" conducted by the Long Island Language Advocates Coalition ("LILAC") from 2014 through 2022,[2] this alleged awareness does not give rise to a *Monell* claim. Because there is no recognized constitutional right to language translation services, the LILAC audits did not put Defendants on notice of ongoing constitutional violations as required for a *Monell* claim. Even if, *arguendo*, Defendants had knowledge that police officers were routinely failing to follow the Language Access Plan, and chose not to address it, a *Monell* claim would not arise because denial of translation services is not "unlawful" unless it is done *for discriminatory reasons,* which is not plausibly alleged here. Neither the SAC nor the audit reports attached as exhibits raise an inference of widespread discrimination among the NCPD personnel who allegedly failed to implement the Language Access Plan during test calls.

For example, the SAC alleges Defendants Ryder and Gregg were both aware of LILAC's 2022 audit report. SAC, ¶¶ 141, 143. However, the report does not provide notice of discriminatory behavior amongst NCPD officers. *See generally* Dkt. #31-6. The anecdotal summaries of the test calls do not include any reports of NCPD officers negatively referencing or disparaging an auditor's national origin. *Id.* at pp. 14-17 of 27. Although the audit report's "Summary of Findings" mentions negative trends in several areas of policy implementation, nothing in the audit report alleges a widespread trend of intentional discriminatory bias among NCPD officers. *Id.* at pp. 16-17 of 27.

---

[2] The SAC alleges that 50 out of 94 test calls to NCPD telephone numbers received translation support during the 2022 audit. SAC, ¶¶ 137-138 and Exhibit 6.  During the 2020 audit, the SAC alleges that 12 out of 21 test calls to NCPD telephone numbers received translation support. *Id.* at ¶ 136.

In sum, Plaintiffs' Second Cause of Action should be dismissed because no Equal Protection right to language access exists, and Plaintiffs have not plausibly alleged they were denied translation services for an impermissible discriminatory reason.

**B. Plaintiffs' Rights Pursuant To The Petition Clause Have Not Been Violated.**

"[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (citing *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 896–897 (1984)). That right has been interpreted to include the freedom to submit a criminal complaint to law enforcement or to report a crime. *Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004).

Plaintiffs allege that their Petition Clause rights were infringed because "denying language services to [LEP] individuals . . . prevented Plaintiffs from petitioning the government for redress of grievances and otherwise communicating with police officers from whom they sought assistance." SAC, ¶ 227. That allegation does not substantiate a violation because it fundamentally misinterprets the meaning and purpose of the First Amendment.

The First Amendment was intended to prevent government from *abridging* a person's freedom of speech—either by taking away her right to speak or by retaliating against her for the content of her speech. U.S. Const. amend. I. ("Congress shall make no law . . . abridging the freedom of speech, or the right of the people to peaceably assemble, and to petition the Government for a redress of grievances."). The First Amendment was never intended to require the government to assist a person to communicate in a way they could not otherwise accomplish on their own.

"The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services." *E.g. Carter v. City of New York*, 2014 WL 4953641, at *4 (S.D.N.Y. September 30, 2014) (quotations omitted). The Petition Clause prevents the government from restricting a person's freedom to file police reports or

threatening persons who make them, but it does not create a duty for police departments to help people write or submit their petitions. *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000) (Posner, C. J.) *cert. denied* 531 U.S. 1080 (2001) ("[T]he right [to petition the government for redress of grievances] . . . has never been understood to be a right to police assistance, or for that matter to any governmental assistance, services, or largesse."). In *Lin v. City of New York*, 2018 WL 4119207 (E.D.N.Y. August 29, 2018), a LEP individual who had been arrested by the police claimed that the arresting officers denied him a translator, leaving him unable to understand their instructions, which resulted in a physical altercation. In rejecting his argument that the Petition Clause had been violated, the Court explained:

> [t]he right to petition in general guarantees only that individuals have a right to communicate directly to government officials, and that individuals have the right of access to the courts to redress constitutional violations. There is no case expanding the right to communicate directly to government officials to include an affirmative duty to provide interpretation services immediately upon arrest or detention under the First Amendment.

*Id.* at *6 (quotation omitted); *Arum v. Miller*, 193 F. Supp. 2d 572, 585 (E.D.N.Y. 2002); ("The Court finds that [defendant's] alleged failure to provide the plaintiff with an interpreter while the police were present at the school district is not a federally protected right under Section 1983"); *see also Li v. City of New York*, 2018 WL 6251339, at *4 (E.D.N.Y. November 28, 2018) (holding that LEP criminal suspect was not entitled to language translation assistance subsequent to his arrest, despite his claim that translation would have permitted him to present exculpatory evidence which would have prevented the arrest). If federal courts do not interpret the Constitution to require government-provided translation services for arrestees whose liberty is being directly and fundamentally curtailed by police, there is no basis to grant an affirmative right to persons who simply wish to report alleged crimes or file complaints about police officers.

The lack of a Petition Clause right to government-provided translation services has also been found in cases involving plaintiffs in federal lawsuits. Lawsuits are the quintessential method for petitioning the government to resolve grievances. *Borough of Duryea*, 564 U.S. at 387. However, it is well-established that civil plaintiffs are not entitled to government-provided translation services when asserting their petition rights in federal court proceedings. "'In general, a pro se civil plaintiff is not entitled to an interpreter or translator.'" *Jean v. Acme Bus Corp.*, 2012 WL 4171226, at *6 (E.D.N.Y. September 19, 2012) (quoting *Desulma v. Goolsby*, 1999 WL 147695, at * 1 (S.D.N.Y. Mar. 16, 1999)); *Saleh v. Barr*, 2020 WL 5544440, at *1 (W.D.N.Y. September 16, 2020) ("[T]he Court informs Petitioners that as individuals bringing a civil lawsuit, it is their obligation to ensure that they can communicate in English with the Court, both orally and in writing"); *Velez v. Burge*, 2009 WL 3459744, at *2 (W.D.N.Y. October 20, 2009) ("'[G]enerally, pro se civil litigants have no entitlement to an interpreter or translator.'" (quotation omitted)). Finally, the Federal Rules of Civil Procedure grant the judge the *discretion* to appoint a free government-provided interpreter to assist a plaintiff during trial (Fed. R. Civ. P. 43(d)). This rule would not be necessary if LEP persons had a constitutional right to government-provided translators when asserting their Petition Clause rights.

Because no constitutional entitlement to a translator exists, the SAC must allege that Defendants took some other affirmative action to deny or infringe Plaintiffs' right to petition the government. The SAC is devoid of these allegations.

Plaintiff E.B. alleges she was able to describe her landlord-tenant grievance to a police officer with the help of an English-speaking friend, and the officer told her "they could not do anything," and she would need to go to court. SAC, ¶¶ 46, 50-55. The NCPD did not prohibit her from submitting a complaint. SAC, ¶¶ 52. Therefore, she has no Petition Clause claim.

On two occasions, Plaintiff M.C. alleges having difficulty communicating with police officers who responded to her residence for reported physical abuse, but not that the police officers prohibited

her from expressing her grievance or threatened her in any way. *Id.* at ¶¶ 66, 76. To the contrary, she avers that she was able to successfully file a complaint against the NCPD through its online portal. *Id.*, ¶ 79. Although she allegedly never heard back from the NCPD, the Petition Clause does not require a response. *Futia v. United States*, 2023 WL 3061903, at *6 (S.D.N.Y. April 24, 2023).

Finally, Plaintiff V.A. called 911 to report a landlord-tenant dispute and was able to "explain the incident" through a translator. *Id.* at ¶ 84. She was provided with additional translation support after police officers arrived at her residence. *Id.* at ¶ 89. Later, her attempt to file an unannounced in-person complaint at a precinct was denied, and she was told that "it was not the correct place to make a complaint." *Id.* at ¶ 92. That denial was not unconstitutional, because government agencies may place limits on the place and manner in which grievances may be submitted. *Hogan v. County of Lewis*, 2014 WL 118964, at *3 (N.D.N.Y. January 10, 2014) (seeing "no authority for the existence of a First Amendment claim premised on the right to have complaints accepted or filed in a particular manner or medium."); *Hilton*, 209 F.3d at 1007 ("[T]he right to petition for redress of grievances [does not] imply a duty of the government to make every government employee a petition receiver."). Plaintiff V.A. admits that she was later able to submit her complaint through the NCPD's online portal, and it generated a response from the department. *Id.* at ¶ 93. She has no Petition Clause claim.

In sum, Plaintiffs' Third Cause of Action should be dismissed because there is no Petition Clause entitlement to a translator, and Defendants did not prevent or dissuade Plaintiffs from petitioning for redress of their grievances.

11

POINT II

**PLAINTIFFS' TITLE VI**
**<u>CLAIM SHOULD BE DISMISSED</u>**

Plaintiffs' Title VI cause of action should be dismissed due to their failure to plausibly plead that they were the victims of any form of prohibited class-based discrimination.

To state a claim for Title VI discrimination, "a plaintiff must allege that the defendant discriminated against her on the basis of race, color, or national origin." *Eldars v. State Univ. of New York at Albany*, 2021 WL 4699221, at *4 (2d Cir. 2021) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)). In this action, Plaintiffs allege national origin discrimination. SAC, ¶¶ 1-2, 182-83. To state a valid claim, the SAC must plead sufficient facts to show that the NCPD's alleged implementation issues with its language access program were a product of Defendants' intentional discriminatory animus against the national origin of the Defendants and other similarly-situated persons. The SAC fails that requirement, and improperly attempts to expand the meaning of "national origin" beyond the limits of established precedent.

**A.  LEP Status Is Not An Automatic Proxy For National Origin Discrimination.**

The SAC's conclusory allegation that Defendants "perceived" speakers of foreign languages to be from foreign countries, SAC ¶ 30, attempts to use language as a proxy for national origin. Although a language proxy theory was accepted by the U.S. Supreme Court in *Lau v. Nichols*, 414 U.S. 563 (1974), subsequent interpretations of Title VI rendered by the court in *Regents of the University of California v. Bakke*, 483 U.S. 265 (1978) abrogated *Lau*'s proxy argument.

**1.  The Concept Of "National Origin" Is Coextensive Under Title VI And The Equal Protection Clause.**

*Lau* involved Equal Protection and Title VI claims on behalf of Chinese-speaking students in the San Francisco public school district. The plaintiffs relied on a theory of unintentional discrimination resulting in a disparate impact in language access. *Id.* at 564-65. The Supreme Court,

12

deciding the case solely on Title VI grounds, accepted the argument that denial of language access amounted to a form of national origin discrimination. *Id.* at 566. In doing so, the Supreme Court relied heavily on an administrative guidance document from the U.S. Department of Health, Education, and Welfare ("HEW") which stated:

> [w]here inability to speak and understand the English language excludes national origin-minority group children from effective participation in the educational program offered by a school district, the district must take affirmative steps to rectify the language deficiency in order to open its instructional program to these students.

*Lau*, 414 U.S. at 568 (quoting 35 Fed. Reg. 11595 (July 18, 1970)). The HEW guidance document's classification of LEP students as a national origin group was the origin of the language proxy theory Plaintiffs now seek to assert.

Four years after *Lau*, the Supreme Court revisited Title VI in *Bakke*. The plaintiff was a medical school applicant alleging reverse racial discrimination against a state institution. 438 U.S. at 277. The question before the court was whether the term "discrimination," as used in Section 601 of Title VI, included reverse discrimination. 438 U.S. at 286-87. Based on the legislative intent, the Supreme Court held that the anti-discrimination provisions in Title VI were coextensively linked with the Equal Protection Clause, stating, "[i]n view of the clear legislative intent, Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment." *Id.* at 287. *Bakke* also recognized that as the federal judiciary's interpretation of the Equal Protection Clause evolves over time, Title VI will evolve in sync. *Id.* at 340 (Burger, C.J., concurring) ("Congress intended the meaning of the statute's prohibition to evolve with the interpretation of the commands of the Constitution.").

The scope of Title VI's prohibitions against discrimination continue to be interpreted as being coextensive with the scope of the Equal Protection Clause. *E.g., Hargrove v. New York City Constr. Auth.*, 2014 WL 3756303, at *3 (E.D.N.Y. May 7, 2014) (quotation omitted) ("Title VI . . .

13

proscribes only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment.").

**2. Language Is Not A Proxy For National Origin In Equal Protection Claims.**

In *Soberal-Perez*, the Second Circuit held that language cannot be used as a proxy for national origin in Equal Protection claims. Therefore, to accept the proxy argument in a Title VI claim would directly violate the coextensive scope of coverage established in *Bakke*.

The plaintiffs in *Soberal-Perez* alleged national origin discrimination based on the U.S. Department of Health & Human Services' ("HHS") English-only policy. 717 F.2d at 41. In affirming the lower court's dismissal pursuant to Rule 12(b)(6) of the Equal Protection claim, the Second Circuit recognized that Hispanic individuals constitute a protected class under the Equal Protection Clause, but found that the HHS policy did not specifically target Hispanics or any other ethnic group or protected class. The court explained:

> [HHS'] failure to provide forms and services in the Spanish language, does not on its face make any classification with respect to Hispanics as an ethnic group. A classification is implicitly made, but it is on the basis of language, i.e., English-speaking versus non-English-speaking individuals, and not on the basis of race, religion or national origin. Language, by itself, does not identify members of a suspect class.

*Id.* at 41 (citing *Frontera v. Sindell*, 522 F.2d 1215, 1219-20 (6th Cir. 1975) (dismissing an Equal Protection claim brought by a Spanish-speaking plaintiff challenging an English-only civil service examination policy) and *Carmona v. Sheffield*, 475 F.2d 738, 739 (9th Cir. 1973) (dismissing Equal Protection claim by Spanish-speaking plaintiffs challenging an English-only notification policy and refusal to provide translators for unemployment insurance claimants).

Following *Soberal-Perez*, other decisions in the Second Circuit have reiterated that a protected class of persons cannot be based solely on their language. *See, e.g.*, *Velasquez v. Goldwater Mem. Hosp.*, 88 F. Supp. 2d 257, 262 (S.D.N.Y. 2000) (quoting *Soberal-Perez*, 717 F.2d at 41)

14

("Classification on the basis of language does not by itself 'identify members of a suspect class' and would not support an inference of intentional national origin discrimination."); *Vialez v. New York Hous. Auth.*, 783 F. Supp. 109, 122 (S.D.N.Y. 1991).

More recently, the New York Court of Appeals relied on *Soberal-Perez* in rejecting a plaintiff's language proxy theory. In *People v. Aviles*, 28 N.Y.3d 497 (2016), the plaintiff, a Hispanic, Spanish-speaking LEP individual was arrested and charged with DWI in New York City. Because he could not speak English, NYPD officers were unable to provide a roadside field sobriety test prior to his arrest. *Id.* at 501. In dismissing his Equal Protection claim, the Court noted that there were no allegations or evidence of discrimination against the plaintiff's ethnicity or any other protected characteristic:

> [w]hile Hispanics as an ethnic group constitute a suspect class, the NYPD policy at issue is facially neutral and is not based on race, ethnicity, or national origin. Rather, the policy is based solely on a suspect's ability to speak and understand English, which, by itself, does not implicate a suspect class.

*Id.* at 503 (citing *Soberal-Perez*, 717 F.2d at 41).

The scope of national origin discrimination cannot be more expansive under Title VI than under the Equal Protection Clause. The Second Circuit's interpretation of the Equal Protection Clause in *Soberal-Perez*, combined with the U.S. Supreme Court's coextensivity rule from *Bakke*, foreclose any use of the language proxy theory in Title VI claims.

### 3. Language Is Not A Proxy For National Origin In Title VI Claims.

Defendants seek to have this Court extend the holding in *Soberal-Perez* in the same manner as it has already been applied in other legal contexts. Courts within the Second Circuit have relied upon *Soberal-Perez* as the basis for rejecting the proxy theory in Title VI's companion statute, Title VII, which applies to workplace discrimination including adverse treatment based on race or national origin. 42 U.S.C. § 2000e-2.

Titles VI and VII both originated in the same legislation: the Civil Rights Act of 1964. Pub. L. 88-352 (July 2, 1964). Language proxy theories are not recognized under Title VII; discrimination based solely on an employee's language does not constitute racial or national origin discrimination under Title VII. Multiple district courts have cited *Soberal-Perez's* Equal Protection holding as the basis for that rule. *Durand v. Excelsior Care Group, LLC*, 2020 WL 7246437, at *5 (E.D.N.Y. December 9, 2020) ("[P]laintiffs base their national origin discrimination claims primarily on defendants' alleged statements prohibiting plaintiffs from speaking Creole or French at work. As the Second Circuit has explained, however, Title VII does not expressly identify language as a protected class") (citing *Soberal–Perez*, 717 F.2d at 41); *Panjawani v. Jet Way Security & Investigations, LLC*, 2016 WL 3675331, at *13 (S.D.N.Y. February 16, 2016); *Vega v. Hempstead Union Free Sch. Dist.*, 2017 WL 10379106, at *11 (E.D.N.Y. May 18, 2017); *Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342, 351 (S.D.N.Y. 2006); *APS Contractors Inc.*, 2023 WL 2574740 at *7; *see also Paradoa v. Philadelphia Hous. Auth.*, 2014 WL 2476595, at *5 (E.D. Pa. June 2, 2014) (quoting *Soberal-Perez*, 717 F.2d at 41).  The same standard should apply here to Plaintiffs' Title VI cause of action.

## B. There Is No Basis For An Inference Of Discrimination On The Basis Of National Origin.

In the absence of a language proxy theory, Plaintiffs must plausibly allege that they were subjected to intentional discrimination based on their country, region or origin, or the country or region from which their ancestors came. The SAC's allegations fail to raise an inference of bias by Defendants on any of those bases.

### 1. A Discriminatory National Origin Classification Must Be More Specific Than "Foreign Born" Or "Non-American."

The SAC alleges that Defendants violated Title VI by discriminating against all LEP persons "based on their perception that non-native English speakers are foreign born and not American" and

16

that the Language Access Program was deficiently applied to speakers of *all* world languages, not just Spanish. SAC, ¶ 30. These allegations of discriminatory animus against *all* persons perceived to be foreign-born, not just those from specific regions of the world, and against *all* languages, not just Spanish, do not constitute national origin discrimination toward a discrete group of persons who share a common ancestry. [3]

"National origin" has been defined by the U.S. Supreme Court to mean "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza*, 414 U.S. at 88; *see also id.* at 89 (reiterating legislative history indicating that "[national origin] means the country from which you or your forbears came . . . Poland Czechoslovakia, England, France, or any other country") (quotations omitted). In *Espinoza*, the Supreme Court disagreed, holding that an across-the-board policy, which treated *all* foreign persons equally, does not constitute national origin discrimination. *Id.* at 95-96; *see also U.S. v. Restrepo*, 999 F.2d 640, 644 (2d Cir. 1993) ("'National origin,' i.e., having been born in a particular country . . . is not synonymous with 'alienage,' i.e., simply not being a citizen of the country in which one is present.").

Likewise, a language policy that treats *all* foreign languages equally, regardless of country or continent or origin, is not discriminatory based on national origin. *See Vialez,* 783 F. Supp. at 112, 123 (dismissing claims where a policy treated all foreign languages equally and therefore did not constitute racial or national origin discrimination because it does not implicate a particular group of races or nationalities, stating that "the 'discrimination,' if there be any, is against all non-English speaking tenants of the Housing Authority, including those who speak Chinese, Korean, Yiddish, Greek, Russian or any other language. All non-English speaking people are equally

---

[3] For example, a 2015 audit conducted by Plaintiff LILAC reports that test calls to NCPD precincts in both Spanish and Korean resulted in comparable deficiencies in the provision of language access services to both sets of callers. (Dkt. #31-3, pgs. 19-26 of 33).

affected by English-only forms. There is no distinct impact on those of Hispanic origin"); *see also Durand*, 2020 WL 7246437, at *6 n. 2 (noting that "if plaintiffs were able to present evidence that other employees were permitted to speak in, for example, Chinese or Portuguese, but not [English], such evidence could support an inference of intentional discrimination on the basis of national origin."); *see also APS Contractors Inc.*, 2023 WL 2574740 at *8.

Because Defendants' alleged failure to properly implement the NCPD's Language Access Plan is not pled to have been intended to target one discrete group of persons based on their country or region of origin, the SAC does not raise an inference of national origin discrimination.

**2.  The SAC Does Not Describe Any Discriminatory Actions Motivated By Plaintiffs' Country Or Region Of Origin.**

Alleged examples of discrimination against a person's language contribute to a national origin discrimination claim only if accompanied by *other* examples of discriminatory conduct directly based on Plaintiffs' countries or regions of origin. "Language discrimination only supports a claim of national origin discrimination when 'it is accompanied by sufficient evidence more directly proving the latter forms of discrimination.'" *Durand*, 2020 WL 7246437, at *6 (quotations omitted); *Cruz v. New Jersey*, 2022 WL 3681243, at *4 (D.N.J. August 25, 2022) (citing *Durand*, 2020 WL 7246437, at *6) ("To be sure, national origin and language proficiency can be connected. But that means [plaintiff] must provide evidence showing that [defendants] relied on such a connection to treat Hispanic [persons] differently *because they are Hispanic*") (emphasis added). The SAC does not allege discriminatory conduct based on intentional discrimination because of Plaintiffs' "Latin American origin." SAC, ¶¶ 13-15.

Nothing is alleged on behalf of Plaintiffs E.B. or M.C. suggesting that the NCPD personnel with whom they interacted harbored any animus against them because of their national origin. There are no allegations of derogatory remarks, actions or personal biases from any of the officers with

whom they interacted. SAC, ¶¶ 41-80. There is nothing to plausibly suggest that personal biases or national origin discrimination played any role in the treatment Plaintiffs received from NCPD officers.

Plaintiff V.A. alleges that, when she requested a translator, the unnamed NCPD officer responded by saying "[n]o, this is the United States of America, we speak English in the United States." SAC, ¶ 86. That alleged statement, focused solely on language, *not* geography or ancestral origins, is not national origin discrimination. No specific country, region, or even continent is referenced. *Compare Kajoshaj v. New York City Dept. of Educ.*, 543 Fed. App'x 11, 14 (2d Cir. 2013) (Summary Order) ("Plaintiffs do not, for instance, assert that any defendant referenced their religion or national origin, much less that they did so in a derogatory manner") *with Richmond v. Gen. Nutrition Cntrs. Inc.*, 2011 WL 2493527, at *3, (S.D.N.Y. June 22, 2011) (finding national origin discrimination where the defendant told the plaintiff to "go back to Africa" and criticized his accent) and *Brewster*, 447 F. Supp. 2d at 350-51 (finding national origin discrimination where geographically-neutral remarks such as "[t]his is America. Speak English" and "[g]o back to your own country if you want to speak Spanish" were *also* accompanied by mocking imitations of the plaintiff's Spanish accent and comments which directly referenced her Cuban heritage, such as "[h]ey, you know Castro?").

Finally, even if the Court finds that the unnamed officer's alleged denial of a translator was a form of national origin discrimination against V.A., her Title VI claim still must be dismissed because the officer's conduct, at best, had a *de minimis* impact on the services she received from the NCPD because, when she first called 911, she was quickly provided with an interpreter. SAC, ¶ 83. Although she alleges the unnamed officer refused to immediately summon a translator, she admits that she was ultimately provided a translator approximately 20 minutes later after calling back to 911. She does not allege any harm resulting from the wait. *Id.* at ¶ 88.

19

Additionally, Plaintiffs' allegations that the NCPD failed to follow Department of Justice language access guidance do not compel the conclusion that the failure was a product of intentional discrimination. *See Murguia*, 81 F.4th at 775 ("[Defendant's] violation of [agency] regulations—by itself—is insufficient to demonstrate a prima facie case of intentional discrimination" and "deficient programming in and of itself is not evidence of intentional discrimination based on national origin" (quotations omitted). The SAC does not allege that intentional discrimination was the primary motivating factor behind Defendants' actions, and that they intentionally chose to disregard the guidance "because of" the impact it would have on a national origin class of persons.

Those requirements are not met, because the only non-conclusory allegations of discrimination in the SAC focus on Plaintiffs' language, not their country or region of origin. Accordingly, Plaintiffs' First Cause of Action must be dismissed.

**POINT III**

**THE OFFICIAL CAPACITY DEFENDANTS**
**<u>SHOULD BE DISMISSED FROM THE ACTION</u>**

Defendants Gregg, Ryder and Doe, each sued in only their official capacities, should be dismissed as parties to the action as the § 1983 claims against them are duplicative of claims against the County and there is no individual liability for the alleged Title VI violation.

In § 1983 actions, "[c]laims against individual municipal employees in their official capacities are 'essentially claim[s] against the [municipality].'" *Greenway v. County of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (dismissing official-capacity defendants where the County of Nassau was also named as a defendant) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). Because the County of Nassau is also a defendant in this action, the three named defendants should be dismissed as duplicative.

20

Additionally, because individual defendants cannot be sued or held liable pursuant to Title VI, *Verdi v. City of New York*, 306 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) (citations omitted), Gregg, Ryder, and Doe should also be dismissed as defendants in the Title VI cause of action.  Because they do not face individual liability, there is no reason to retain them as parties to the action.

### POINT IV

### THE NASSAU COUNTY POLICE DEPARTMENT SHOULD BE DISMISSED FROM THE ACTION

Defendant NCPD should be dismissed from the action. Plaintiffs' claims against the NCPD may only be alleged against Nassau County; the NCPD itself, an administrative arm of the County, cannot be individually sued. *Henry v. County of Nassau*, 6 F.4th 324, 336 (2d Cir. 2021) ("Nassau County Police Department is a non-suable agency of Nassau County"); *Aguilera v. County of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006) ("[u]nder New York law, the Nassau County Police Department is considered an administrative arm of the County, without a legal identity separate and apart from the municipality and, therefore, without the capacity to sue or be sued"); *see also Cole v. Nassau County Police Dept.*, 2023 WL 4420256, at *2 (E.D.N.Y. July 10, 2023); *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017); *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012). Accordingly, the NCPD is not a proper party and should be dismissed from this action.

### POINT V

### THE COURT SHOULD DECLINE PENDENT JURISDICTION OVER THE PLAINTIFFS' STATE LAW CAUSE OF ACTION

If the Court dismisses Plaintiffs' federal claims, the Court should then decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over the fourth cause of action, which alleges violation of the New York State Constitution Equal Protection Clause. SAC, ¶¶ 233-38. Absent unusual circumstances, a district court should not exercise supplemental jurisdiction over

pendent state claims when the underlying federal causes of action have been dismissed early in a civil action. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988). "In the interest of comity, the Second Circuit instructs that absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should `abstain from exercising pendent jurisdiction." *Genovese*, 921 F. Supp. 2d at 26 (E.D.N.Y. 2013) (quotation omitted).

No facts asserted by Plaintiffs in the SAC would justify the exercise of supplemental jurisdiction. To the contrary, questions of first impression about whether the New York State Constitution guarantees immediate or near-immediate language translation services during encounters with local police officers are best left to New York State courts, in their primary role as interpreters of New York State law. Accordingly, the Court should decline to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over the fourth cause of action and dismiss the SAC.

**POINT VI**

**THE PLAINTIFFS' CAUSE OF ACTION FOR
<u>DECLARATORY JUDGMENT SHOULD BE DISMISSED</u>**

Plaintiffs' fifth cause of action, requesting a declaratory judgment, is derivative of Plaintiffs' other federal causes of action. If the Court dismisses the federal causes of action, then the declaratory judgment request should also be dismissed.

"[A]n action for declaratory judgment may be brought in federal court ordinarily only if there would exist a basis for federal jurisdiction." *Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 186 (2d Cir. 1977) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950)); *see also Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) *cert. denied* 562 U.S. 1005 (2010). A request for a declaratory judgment "relies on a valid legal predicate" and "does not create an

independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) *cert. denied* 568 U.S. 958 (2012) (quotation omitted).

## **CONCLUSION**

For all of these reasons, Defendants respectfully request that this Court dismiss the Second Amended Complaint pursuant to Rule 12(b)(1) and (6) and 28 U.S.C. § 1367(c)(3).

Dated:  Melville, New York
        April 10, 2024

                        KEANE & BEANE, P.C.


                        By:  ___/s/ Sharon N. Berlin_____
                              Sharon N. Berlin, Esq.
                              Richard K. Zuckerman, Esq.

                        *Attorneys for All Defendants*

                        534 Broadhollow Road, Ste. 130
                        Melville, New York 11747
                        (631) 776-5910